### SHERARD et al. v. WALTON et al.

#### (District Court, W. D. Tennessee, W. D. July 15, 1913.)

#### No. 669.

1. COURTS (§ 367*)—FEDERAL COURTS—DETERMINATION—RULE OF PROPERTY.

The decision of the Supreme Court of Tennessee that no constitutional union between the Cumberland Presbyterian Church and the Presbyterian Church of the United States of America was effected May 24, 1906, notwithstanding the decision to the contrary of the two General Assemblies of the respective churches, did not constitute a rule of property in Tennessee, but was the decision of a question of general jurisdiction, and therefore not conclusive on federal courts sitting in that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*]

2. RELIGIOUS SOCIETIES (§ 12*)—UNION—EFFECTIVENESS—ECCLESIASTICAL QUESTIONS—DETERMINATION BY THE ECCLESIASTICAL JURISDICTIONS—CONCLUSIVENESS.

Whether a constitutional union between the Cumberland Presbyterian Church and the Presbyterian Church of the United States of America was effected by the attempted consolidation in May, 1906, was an ecclesiastical

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

question, the determination of which in favor of the validity thereof was conclusive on the civil courts.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 87–98; Dec. Dig. § 12.*]

In Equity. Suit by Mary Flautt Sherard, by her husband, Holmes Sherard, as her next friend, and others, against C. H. Walton and others. Decree for complainants.

F. S. Elgin, of Memphis, Tenn., and Jno. M. Gaut, of Nashville, Tenn., for plaintiffs.

W. C. Caldwell, of Trenton, Tenn., for defendants.

McCALL, District Judge. It would be almost an interminable undertaking to state all the facts in this case. Suffice it to say that it is a controversy between the plaintiffs and the defendants for the occupation and use of a church building formerly known as the First Cumberland Presbyterian Church of Memphis, Tenn., and grows out of the question of whether or not a union between the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, was effected on May 24, 1906.

It appears from the record that the General Assembly of the Cumberland Presbyterian Church, which is the highest authority of that organization, and the General Assembly of the Presbyterian Church in the United States of America, which is the highest authority in that organization, declared on the date last above mentioned that the two churches had been united under and in accordance with the constitutions and rules governing the said two bodies. And this union was promulgated.

A number of Cumberland Presbyterians (hereafter referred to as "Persisting Cumberlands") opposed the union, and, after the two General Assemblies had declared the union had been legally and constitutionally effected, met and declared that the union had not been so effected, thus repudiating the action of the two General Assemblies, and undertook to continue the religious organization known as the Cumberland Presbyterian Church. So that a controversy arose as to who should have the use and occupancy of the various churches and other property that belonged to the Cumberland Presbyterian Church prior to May 24, 1906. This resulted in the bringing of the suit of Landrith v. Hudgins in the state chancery court of Lincoln county, at Fayetteville, Tenn., for the purpose of having the court determine which of these organizations was entitled to the church property in that city. The result of that suit, as decided on appeal by the Supreme Court of Tennessee, was that those calling themselves the Persisting Cumberland Presbyterians were entitled to occupy and use the church at Fayetteville for worship. That conclusion was reached after the Supreme Court of Tennessee had decided in that case that there had been no, legal and valid union of the two churches. Landrith v. Hudgins, 121 Tenn. 556, 120 S. W. 783.

The result of the suit before me must turn, in my judgment, upon whether or not there was a valid union of the churches.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] It is insisted by counsel for the defendant that the Supreme Court of Tennessee, in the case of Landrith v. Hudgins, has decided that question in favor of the defendants, and that that decision established a rule of property in Tennessee and is binding upon the federal court. It is as strenuously insisted by plaintiffs that the holding of the Supreme Court of Tennessee in Landrith v. Hudgins did not establish a rule of property, and that the question is one of general jurisprudence, and that the holding in that case is not binding upon this court.

The respective rights of the plaintiffs and the defendants in this case were fixed on May 24, 1906; that is to say, if the union was valid, plaintiffs here are, and have been since that date, entitled to the use and occupancy of the church property in question. If it was invalid, the defendants are entitled to its use and occupancy. The validity of the union was the primary and basic question that was before the Supreme Court of Tennessee for its determination, and which it must have decided before reaching a conclusion as to who was entitled to the use and occupancy of the church property in question in that case.

[2] I am of the opinion that in the case of Landrith v. Hudgins there is no rule of property announced, but that the right to use and occupy the property there in controversy followed the conclusion reached as to whether or not there was a valid union of the two churches. That question, I think, is an ecclesiastical one, which must be determined, under the constitutions and laws of the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, by the General Assemblies, which are the highest authorities of those churches. Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666; Nance v. Busby, 91 Tenn. 328, 18 S. W. 874, 15 L. R. A. 801; Mack v. Kime, 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675; Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670; Ramsey v. Hicks, 174 Ind. 428, 91 N. E. 344, 92 N. E. 164, 30 L. R. A. (N. S.) 665; Presbyterian, etc., v. Cumberland, etc., 245 Ill. 74, 91 N. E. 761; Wallace v. Hughes, 131 Ky. 445, 115 S. W. 684; Committee of Missions v. Pacific Synod, 157 Cal. 105, 106 Pac. 395; Sanders v. Baggerly, 96 Ark. 117, 131 S. W. 49; Harris v. Cosby, 173 Ala. 81, 55 South. 231. The conclusion reached in Landrith v. Hudgins, that no union was effected, while entitled to the highest respect, is not, in my judgment, controlling in federal jurisdictions.

This record discloses the beginning of the effort at a union in 1903, and the successive steps taken by the two churches, with the result that on the 24th day of May, 1906, the General Assemblies of both churches declared that the union had been consummated, as provided by the laws of the two respective churches. The steps, leading up to the final result, were directed by learned men of the respective churches, who were far more familiar with the canons of their respective organizations than it is possible for the judge of any civil court to be, and it would seem that those learned and pious men, whose life work is that of going about the world doing right themselves, and exhorting others to like conduct, would have conducted this effort at union fairly and under a correct interpretation of the laws of the respective

churches, and that the result of the union, as announced by the two General Assemblies, followed the wishes of the two organizations, as fairly, legally, and constitutionally expressed.

I think, upon reason, as well as upon authority, that the two churches should be left to determine for themselves whether or not there was a valid union between them. The highest authority of both churches having determined that there was such a union, that question should be left at rest, in so far as the civil courts are concerned. Holding that the action of the two churches was conclusive on the subject of the union, it follows that after the union the use and occupancy of the church building formerly known as the Cumberland Presbyterian Church of Memphis, Tenn., became subject to the use and occupancy of the Presbyterian Church in the United States of America—the united church.

This conclusion would be further justified, if further justification were necessary, for the reason that this record shows that, out of a membership of something like 280 of the First Cumberland Presbyterian Church of Memphis, Tenn., at the time of the union, all of them acquiesced in the union for more than three years thereafter, and until the decision in the case of Landrith v. Hudgins. Then it was that 8 or 10 of the members of the Cumberland Presbyterian Church before the union declared themselves "Persisting Cumberlands," repudiated the actions of the General Asssemblies of the respective churches, and set about to revitalize the First Cumberland Presbyterian Church in the city of Memphis, and to get the possession and use of the church building on Court Avenue, the property in question here. The same congregation that worshipped in that building prior to the union is worshipping in it now, and have been ever since the union, with the exception of these 8 or 10 defendants. The right of the congregation to use and occupy the church was not called in question by these defendants until the opinion in the case of Landrith v. Hudgins was announced; the only change in the congregation being the name. Formerly it was the First Cumberland Presbyterian Church of Memphis, Tenn.; now it is the Court Avenue Presbyterian Church, U. S. A., of Memphis, Tenn.

Other questions raised by the pleadings and proof, and discussed at the hearing, I do not think material, in view of the opinion hereinbefore expressed touching the power of the churches to determine for themselves whether or not there was a union. It is sufficient to say that I think the relief prayed for by the plaintiffs should be granted, and a decree will be entered, enjoining the defendants, according to the prayer of the bill.